510-285-7930
MARIMAR CORNEJO
P.O. BOX 190274
SAN FRANCISCO CA 94119

510-285-7930
Jamil Bey
C/o Marimar Cornejo
P.O. Box 190274
San Francisco, California
[94119]

IN PRO SE

MARIMAR CORNEJO, an individual,
Jamil Bey, a Natural Person

           Plaintiff,

      vs.

Teresa Moran individually, CITY & COUNTY
OF SAN FRANCISCO, a municipal corporation;
AUTO RETURN, a unknown corporation

         Defendants,

FILED

AUG 1 1 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CASE NO.:

CV17 4664 SK

COMPLAINT FOR DAMAGES &
INJUNCTIVE RELIEF
(42 U.S.C §§ 1983, 1988; and pendent tort
claims)

**JURY TRIAL DEMANDED**

## INTRODUCTION

1.    This is an action for damages and injunctive relief, brought pursuant to Title 42 U.S.C

§§ 1983 and 1988, and the Fourteenth Amendments to the United States Constitution, under

California Civil Code Sections 52.1, and under the common law of California. This action is against

the CITY & COUNTY OF SAN FRANCISCO, Teresa Moran and E. Chin of the SAN FRANCISCO

MUNICIPAL TRANSPORTATION AGENCY.

2.      Plaintiffs are suffering irreparable harm, and will continue to suffer increasing irreparable injury unless Defendants are immediately enjoined by this Court from depriving plaintiffs of their Automobile, and restore them to the status they were prior to their unlawful seizure.

## JURISDICTION

3.      This action arises under Title 42 of the United States Code, Section 1983.  Jurisdiction is conferred upon this Court by Title 42 of the United States Code, Sections 1331 and 1343.  The unlawful acts and practices alleged herein occurred in the City of San Francisco, California which is within the jurisdictional boundaries of this court. The damages sought are within the jurisdictional limits of this court.

## PARTIES

4.      Marimar Cornejo (hereinafter "Plaintiff"), is a resident of San Francisco and a United States Citizen.

5.      Jamil Bey (hereinafter "Co-Plaintiff) previously and legally known as Josh Brokemond, is an inhabitant at California and is a American National.

6.      CITY & COUNTY OF SAN FRANCISCO (hereinafter "DEFENDANT"), is and at all times mentioned herein, a municipal entity, duly organized and existing under the laws of the of State of California.

7.      At all times herein mentioned, Defendant, TERESA MORAN (hereinafter "DEFENDANT"), at all times mentioned herein, was acting as a Hearing Officer for the SAN FRANCISCO Municipal Transportation agency and is sued in her individual capacity, and in her capacity as an Hearing officer of the SAN FRANCISCO MUNICIPAL TRANSPORTATION AGENCY. Plaintiffs are ignorant of the true names and capacities of Defendants and  DOES 1

through 25, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiff as set forth herein. Plaintiff will amend his complaint to state the names and capacities of DOES 1-25, inclusive, when they have been ascertained.

8.    Plaintiffs may be required to comply with an administrative tort claim requirement under California law. Plaintiff has exhausted all administrative remedies. Plaintiff filed a claim within the six-month statute of limitations and on August 8, 2017 personally delivered a Notice of Intent to Sue to the City Attorney of San Francisco.

## STATEMENT OF FACTS

9.    The San Francisco Municipal Transportation agency is an agency created by the City of San Francisco, and authorized by its charter.

10.    The Preamble of the Charter of the City of San Francisco reads as follows:

> "In order to obtain the full benefit of home rule granted by the Constitution of the State of California; to improve the quality of urban life; to encourage the participation of all persons and all sectors in the affairs of the City and County; to enable municipal government to meet the needs of the people effectively and efficiently; to provide for accountability and ethics in public service; to foster social harmony and cohesion; and to assure equality of opportunity for every resident:
>
> We, the people of the City and County of San Francisco, ordain and establish this Charter as the fundamental law of the City and County."

11.    Section 1.01 of the Charter is labeled Rights and Powers and reads as follows:

> "The City and County of San Francisco may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in this Charter. The City and County may make and enforce within its limits all local police, sanitary and other ordinances and regulations. The City and County may appear, sue and defend in all courts in all maters and proceeding."

12.     On Friday July 21, 2017, Ms. Cornejo on her way to work, arrived at her automobile and to her shock, noticed a immobilization device commonly known as a "Boot", attached to the wheel of the car.

13.      No information was left attached to her automobile, including a notice of who placed this device on her property, and where she may go to demand its removal, or what proceeding may be conducted to effectuate the removal of the device.

14.     Ms. Cornejo was devastated by the discovery of, and condition of her property, and due to her obligation to her employer did not have the ability to seek a proper solution and remedy and thus delegated that duty to Co-Plaintiff who regularly handles the affairs of Ms. Cornejo.

15.     Co-Plaintiff ascertained information suggesting the San Francisco Municipal Transportation Agency was the PERSON responsible for the issuing the boot.

16.     Co-Plaintiff the same day prepared a claim and went to the Office of the City Attorney to mitigate damages, explaining to an attorney the irreparable harm that will be suffered starting the next day on Saturday if the boot is not released. The attorney made representations to Co-Plaintiff that it could not order release of the property, but could only pay compensation for damages after the claim has been processed. He further stated that SFMTA would be the proper place to ask for a release of the Boot.

17.     Co-Plaintiff on Monday July 21, 2017 went to the SFMTA where he was informed by a supervisor doing business as Kyle (PS73), that a booting device was attached to the automobile for reasons of delinquent citations.

18.     Co-Plaintiff attempted to give to Kyle a response to any and all parking tickets that are issued against his and Plaintiffs property. Kyle agreed to accept the response and stamp it as received but later directed Co-Plaintiff to bring the response before a Hearing Officer.

19.     Plaintiffs allege on information and believe that citations which are under review, are not included as delinquent citations and therefore would not be eligible for a boot.

20.     Kyle made further representations to Co-Plaintiff as follows:

a.  After we immobilize the property we require payment of all outstanding tickets on all vehicles owned by Plaintiff, and in addition a boot fee of $65, before the vehicle is released.

b.  We have records that the notices were sent out to you to a P.O. Box.

c.  No administrative review was requested by you or anyone else.

d.  A hearing can be conducted on a first come first serve basis, and the rules of the hearing are up to Co-Plaintiff and the hearing officer. The hearing is the only thing that could secure a release of the Boot if it was done in error.

e.   He has no access to court records thus does not know if anyone has filed any action in court accusing Plaintiff or Co-Plaintiff of violations of statues or injury caused.

f.  He does not know the rules of procedure to the Boot hearing.

21.     Co-Plaintiff reserved all of his rights prior to commencing the hearing, and appeared before Teresa Moran who was acting in the capacity of a Hearing Officer.(Audio Recording referenced as **Exhibit B**)

22.     Co-Plaintiff was concerned about receiving adequate due process at the hearing and prepared a list of question for the Hearing Officer, which were designed to assist him with having a fair hearing that comports to due process.

23.     The Hearing officer admitted she was a lawyer duly licensed to practice law.

24.     The hearing officer made representations which were factually false, that all notices of Citation that were incurred were sent to a P.O. Box which is on record.

25.    The hearing Officer after making the previous statement mentioned she has another address on file which is located in Stockton California. She asked Co-Plaintiff whether that was a bad address, to which Co-Plaintiff agreed it was an old address.

26.    Instead of inquiring whether Co-Plaintiff had actually received the notices at the old address, and for how long have Plaintiff's been vacant from the said address, the Hearing Officer continues to proceed with the following statements:

> " We are having a boot hearing, which means you have 5 or more
> delinquent tickets, which means the time has passed for you to protest,
> and late fees have attached thus the tickets are boot eligible after late fee
> has attached."

27.    She further stated:
> "So in this boot hearing all im doing is verifying whether or not there is
> five or more, I cannot go into the individual tickets and talk about them
> because this is not the forum in which we are able to do citation hearings,
> we are just doing a boot hearing now".

28.    Plaintiff then began questioning the Hearing Officer asking her whether she was licensed to practice law and does she have a bar number.

29.    After Co-Plaintiffs question, the Hearing Officer became defensive and began to show body language and tone that was indicative of bias towards Co-Plaintiff.

30.    The Hearing officer proclaimed those questions were irrelevant to the proceeding and refused to provide her bar number and told plaintiff he can go look it up.

31.    Co-Plaintiff contends that information is relevant to the proceeding, because if in fact the Hearing Officer is a lawyer, she is an officer of the court and is deemed to know the law, and thus should be able to understand the types of arguments that Co-Plaintiff intends to raise in the hearing, and thus should be able to ensure the hearing comports with due process.

32.    Plaintiff mentioned to the Hearing Officer that he was trying to determine the constitutionality of the hearing, and procedures allowed therein.

33.     The hearing officer then mentioned to plaintiff that he was off the mark with his

questions, and went on to say that the California Vehicle Code is governing this hearing.

34.     When Co-Plaintiff asked what sections of the vehicle code are governing this hearing,

She replied:

> "Many of them many of them, I can't give you every one um, um uhh,
> these are a list of the tickets you have and the vehicle code sections are on
> here, and  if its not a vehicle code violation, its a transportation code of
> San Francisco... there is a vehicle code violation for not having
> registrations tabs that are current on the vehicle."

35.     Co-Plaintiff states by reference that he never signed a notice to appear on the Vehicle

Code violation, and alleges on information and belief that an accusation of a violation of California

Vehicle Code must be brought in the superior court, not an inferior administrative hearing like the

one provide by the SFMTA.

36.     Co-Plaintiff then asked the hearing officer to revisit the scope of the hearing, and

asked her to explain to him all the issues that may brought into the hearing, and the scope of the

hearing.

37.     The Hearing Officer replied:

> "Ok, the scope of this hearing is very narrowly defined as whether or not
> this is a valid boot, a boot is put on a vehicle when there are five or more
> delinquent citations against it, and there are more than five in this case on
> this vehicle, that's all I am looking at, I am not looking at any individual
> tickets, I am not looking at anything else regarding this vehicle, just is it a
> valid boot, I say yes."

38.     The Hearing Officer in the previous statement, effectively made a ruling on the

validity of the boot without accepting any evidence from Co-Plaintiff, and without giving him an

opportunity to be heard.

39.     Fundamental Due process requires that a person be given an opportunity to be heard at

a meaningful time, and in a meaningful manner. (See *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct.

779, 783, *Fuentes v. Shevin*, 407 U.S. 67, 92 s.Ct.)

40.     Only 7 minutes had elapsed since the commencement of the hearing, and Co-Plaintiff to that point, had only ascertained that Defendant was duly licensed to practice law, that a P.O. Box existed in their records, and that the other address on file was a bad address, and had just finished asking the Hearing Officer to explain the scope of the hearing including what issues may be raised by Co-Plaintiff.

41.     The Defendant Hearing Officer admitted the only issues she will consider in the hearing are whether there were 5 or more delinquent parking citations, and that nothing else will be considered.

42.     Co-Plaintiff asked Defendant Hearing Officer whether it matters if he and Plaintiff where properly noticed, and that the notices of citation were properly issued.

43.     Defendant Hearing Officer, after previously stating nothing is at issue but whether there are five or more delinquent citations, admitted that whether someone was properly noticed of the citations is an issue in this matter.

44.     Co-Plaintiff alleges by reference, that Defendant Hearing Officer concealed from Co-Plaintiff the full scope of the hearing by not informing him when he asked, that proper notice of citations was at issue in the hearing, therefore violating his due process right to be informed of defenses he may raise.

45.     After agreeing with Co-Plaintiff that notice was an issue in this hearing, Defendant Hearing Officer went on to state that she already verified that a valid P.O. Box exist where all the notices were sent, and once they are placed in the U.S. Mail they are considered validly delivered, and is no longer the Cities responsibility, and delivery is considered valid according to the California Vehicle Code. No statutory authority of this was introduced at the hearing.

46.     That conclusion by Defendant Hearing Officer is flawed for the following reasons. (1)
Placing a notice in the U.S. Mail and delivering it to a location that Plaintiffs are not located does not
give them proper notice. (2) Defendant Hearing Officer verified that the City has on file an additional
address that is Different than the address where she claims all the notices were sent, and looking at
the list of citations provided by Defendant, It reflects notices were sent for the alleged boot eligible
citations before Plaintiff had opened the P.O. Box where Defendant claims the notices were sent, thus
would have been an impossibility to have sent the notices to that location. (3) Defendant did not
personally send the Notices herself, and admits they were not sent certified mail, and thus her
statements are purely unsworn hearsay statements devoid of merit, and lacking actual proof of
execution and validity.

47.     Next Co-Plaintiff asked Defendant have we determined the rules of procedure for this
proceeding.

48.     Defendant responded as follows:

> "There is various code sections, you can hire an attorney to look em up but
> I am not gonna go through the vehicle code and provide you with every
> section of the vehicle code that applies to this procedure... You can look
> em up"

49.     Defendant did not provide Co-Plaintiff any reference as to what specific sections she
derives her authority, or what issues, objections, and defenses are available in violation of Co-
Plaintiffs due process rights.

50.     Co-Plaintiff alleges that to not give him fair notice of the statutes, procedures,
ordinances, and rules of procedure that apply to the hearing is certainly a violation of procedural due
process, and prevents him from understanding the proceeding including whether there actually exist
any authority for the actions taken therein, and is Defendant Hearing Officer applying her own
arbitrary and secret rules.

51.     Co-Plaintiff has a right to due process and right to understand any proceeding to which he is a party that affects his Rights to possession of his property, and to receive all evidence used against him. (See U.S. Constitution 5th and 14th amendments, State of California Constitution Article 1 Section 7,*Goldberg v. Kelly* 397 U.S. 254, 90 S.ct. 1011)

52.     Furthermore, as required by California Vehicle Code § 22650 (a) and stare decises caselaw, Defendant Hearing Officer has the burden to prove the Authority for and Validity of the action taken to Boot Plaintiffs' automobile. (See *David v. City of Los Angeles* 307 F. 3d 1143, *Smith v. Santa Rosa Police Department*, 97 Cal.App.4th 546, 569, 119 Cal.Rptr.2d 72, 89-90 (2002))

53.     Co-Plaintiff alleges by reference that Defendant Hearing Officer failed to establish that burden, and in addition, affirmatively proclaimed she does not have the burden to provide the codes applicable to the hearing and that the burden rest on Co-Plaintiff.

54.     If the Statue expressly placed the burden on Co-Plaintiff which it did not, by Defendant restricting the scope of the hearing to the two issues of whether there are 5 or more Delinquent Citations against the property, and whether notice was proper, renders a defense to plaintiff unavailable. Whether there are 5 or more citations against the vehicle could be reviewed without Co-Plaintiffs presence, and affords him no ability to raise any defense where the validity of the initial citations is not at issue, and plaintiff has no personal knowledge of whether notices were properly mailed and can only be proven if Defendant show receipts of certified mail.

55.     Therefore the procedure provided by the City of San Francisco at the SFMTA does not comport with due Process.

56.     The right of a Defendant or accused to cross examine a witness and challenge the validity of all evidence presented against him is a fundamental right of due process. (*Goldberg v. Kelly* 397 U.S. 254, 90 S.ct. 1011)

57.     In this incident, Defendant hearing officer brought no evidence of the original citations that were issued to Plaintiff's property, brought no witnesses stating they faithfully executed delivery of the citations and proof that they were received by Plaintiffs, did not swear an oath that she tells the whole truth and nothing but the truth, established no adequate record of the proceeding, and therefore the hearing was flawed not comporting with the requirements of due process. see *Goldberg v. Kelly* 397 U.S. 254, 90 S.ct. 1011:

> "It has been a relatively immutable principle that where governmental action seriously injures an individual and reasonableness of that action depends on fact-findings, evidence used to prove government's case must be disclosed to individual so that he has opportunity to show that it is untrue."

58.     It is a fact that the action taken by the City of San Francisco has, and will continue to deprive Plaintiffs of their property, and all consequences to the quality and sustainability of their lives and liberty will arise from those actions, and the SFMTA failed to bring forth evidence sufficient to allow Co-Plaintiff to prove that its evidence was untrue or inadequate to prove their case.

59.     Written on a notice of parking violation, it contains the address to where it was mailed. Without a copy of the actual notices presented, Co-Plaintiff could not point out that the address the Defendants sent the notices to were not the address they claim it was sent.

60.     Defendant Hearing Officer didn't even apply the factors mentioned in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) in application of the procedure of hearing provided to Co-Plaintiff, when she did not consider whether the use of Police Power was appropriate in this particular incident.

61.     Co-Plaintiff brought into question the compelling governmental interest that must exist that outweighs Plaintiffs' private interest to possession of their property, and was denied consideration of that issue when in fact that issue is critical to whether the booting was appropriate.

(See *Cafeteria & Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961)

62.    Co-Plaintiff made a statement that he will lose his dwelling unit and not have the ability to purchase food and sleep in his automobile, as a result of the the SFMTA depriving him and Plaintiff from it.

63.    Co-Plaintiff attempted to explain the irreparable harm that is due Plaintiffs by the deprivation of their property rights, but was interrupted by the Defendant Hearing Officer who changed the topic of Co-Plaintiffs testimony disrupting his ability to be heard.

64.    Defendant mentioned that constitutional issues have no place in her forum and that they will not be entertained by her, and that Co-Plaintiff should go to another forum to make those claims.

65.    Defendant reiterated on numerous occasions, that Co-Plaintiff's questions and demands regarding proof of the validity of the Boot would not be entertained in the said forum, and she stated that she encourages Co-Plaintiff to go to another forum such as a small claims court, or whatever court he would like other than her forum to make those arguments.

66.    To state that constitutional issues are not applicable in the hearing suggest that she occupies the believe that she, and the City of San Francisco, are not bound by the Constitution of the State of California or of the United States.

67.    In the preamble of the Charter of the City of San Francisco, it states that the city's power to make rules, regulations, and ordinances, is subject only to the limitations of the charter, and does not therein subject itself to the U.S. Constitution, Or Constitution of the State of California, or any international treaties binding on the United States and States respectfully.

68.     Her position that the Constitution does not apply to her hearing is flawed. Article 6 of the U.S. Constitution known as "the Supremacy Clause", states it is the supreme law of the land, and is binding on all judges, States, Public Officials, and their constitutions.

69.     The City of San Francisco is a political subdivision of the State of California deriving its authority from its Constitution. The Hearing is provided for the very reason of comporting with Due Process after a seizure of property, which is fatal to a position that her forum is not appropriate to raise issues of whether her actions are constitutional.

70.     Co-Plaintiff even asked Defendant does she have the charter of the City of San Francisco which proves her authority to conduct this hearing, and she agreed she does not have it with her but asserted that it gives her authority to take the actions she is taking, but did not cite any specific authority from the Charter, Transportation Code, or the Administrative Code.

71.     In Chapter 100, section 100.1(b) of the Administrative Code of the City of San Francisco, it specifies that the imposition of administrative fines is not intended to be punitive in nature, but is instead intended to compensate the public for the injury and damage caused by the prohibited conduct. It further states that administrative fines are intended to be reasonable and not disproportionate to the damage or injury to the public caused by the prohibited conduct.

72.     Plaintiffs allege that the imposition of the initial citations which concern remaining in a residential parking area for more than two hours, and having an expired parking meter, did not injure or damage any man or woman residing in the City of San Francisco, and thus violates the authority which allows the City of San Francisco to issue citations according to their code.

73.     Plaintiffs contend, the fines alleged to be due to the Defendants are disproportionate to the damage or injury caused for two reasons, (1) because there is not any damage or injury caused and are no allegations of injury in-fact being alleged by the SFMTA, and therefore is no cognizable

or justiceable controversy that would confer jurisdiction upon a competent court. (see A*llen v. Wright* 468 U.S. 737, 751, Clifford S. C Superior Court 45 Cal.Rptr.2d) (2) The fines are excessive and even if they were properly valid in all other respects, Plaintiff's would be required to cease paying for a dwelling unit for two months thus becoming homeless in order to pay the alleged debt.

74.    Even if Defendants were a Judgment Creditor for the amounts demanded, they could only garnish 25% of Plaintiffs check to satisfy a judgment, and Plaintiffs automobile would be exempt from levy.

75.    Defendant's use of police power to cease Plaintiffs' property was unjust and was not not needed to secure an important and immediate governmental purpose which is required in order to seize property without prior notice and a hearing.

76.    At the time of seizure, Plaintiffs' automobile was legally parked not blocking or obstructing the roadway, and Defendants in seizing Plaintiffs' automobile, could not possibly have recovered any money from Plaintiffs until after a lien sale, which will occur more than 30 days after a tow, and possibly take 120 days. Therefore there certainly was no urgent need to tow Plaintiffs property before providing them notice and a pre-deprivation hearing which could have allowed Plaintiffs to file an injunction before the deprivation of their property, thus preventing the injuries done to them.  (see *Fuentes v. Shevin*, 407 U.S. 67, 92 s.Ct.)

77.    Defendant Hearing Officer affirmatively agreed that she and the City of San Francisco has the authority to release the property, and are aware of the irreparable harm caused to Plaintiffs by depriving them therefrom, and accept all responsibility and liability in damages imported on them for failure to release Plaintiffs' Automobile.

78.     Plaintiffs allege that Defendant effectively waived the right to challenge an award of damages against her and the City of San Francisco, by express acceptance as stated in the previous paragraph and referenced in the audio recording which is part of this record.

79.     Furthermore by her statements and will, she has waived any jurisdictional challenge that she or the City of San Francisco may make in this particular action in response to Plaintiffs bringing this actions to redress those deprivations.

80.     Defendant admitted that she would be making the final determination of whether the Booting was valid, and not an independent disinterested party.

81.     Defendant admitted she is employed by the SFMTA and receives compensation from conducting hearings.

82.     The SFMTA has a financial interest in collecting revenue from persons it issues citations.

83.     The SFMTA operates a building  titled "Customer Service Center" where it takes payments, holds, hearings, and carries out other business.

84.     The SFMTA uses  a website (www.sfmta.com) where they advertise to their customers that they are a one stop shop providing services to pay citations, purchase parking passes, contest citations, and recover vehicles when they have been towed or booted.

85.     Plaintiff's allege on information and belief that the SFMTA is doing business in a for profit manner and using private commercial paper in tender of payment.

86.     Plaintiff's allege that the SFMTA hires hearing officers and instructs them not to consider constitutional and legal arguments during the course of a Boot Hearing, in order to maximize revenues, thus systematically denying persons procedural and fundamental due process.

87.    The SFMTA engages in a pattern and custom of systematically issuing citations (some without probable cause) causing persons to have to avail themselves to their proceedings, and later denies them procedural due process by drastically restricting the issues that may be raised  in the proceedings, and refusing to properly consider the few issues that are of issue in the hearing.

88.    The language written on citations issued by the SFMTA does not give persons fair notice that failure to respond within 21 days from the date of the citation issuance will prevent a person from being able to contest a citation. Thus does not comport with due process when the person is later prevented from requesting a hearing on those issues and denied the ability to be heard on those initial citation.

89.    When an agency of a Municipality engages in an unconstitutional custom, practice, or pattern, the Municipality avails itself to damages under Title 42 Section 1983 of the Untied States Code.

90.    Proper analysis requires separation of two different issues when claim under § 1983 is asserted against municipality (1) whether Plaintiffs harm was caused by constitutional violation, and (2) if so, whether city was responsible for that violation. See *Collins v. City of Harker Heights*, Tex., U.S.Tex.1992, 112 S.Ct. 1061, 503 U.S. 115, 117 L.Ed.2d 26.

91.    Plaintiffs exclusive right to possession of their property is a right protected by the liberty clause of the U.S. Constitution and it may not be deprived without due process of law (see  5th and 14th amendments to the U.S. Constitution, and Article 1 Section 7 of the California Constitution) and all Defendants acting in a governmental capacity violated Plaintiffs rights under the same.

92.    Defendant Auto Return cooperated with the SFMTA when they held Plaintiffs automobile for ransom pursuant to express agreement, and began billing him for storage and refused at Co-Plaintiffs request to release to him their property without paying them prior.

93.   For all Defendants to hold plaintiffs Automobile against their will with no security instrument, Judgment. or contract, amounted to conversion of Plaintiffs Property under the common law of California.

94.   Plaintiffs suffered and are continuing to suffer irreparable harm by the actions of defendants as follows:

a.   Plaintiffs are required to move from their dwelling every 21 days by a owner or manager in order for them to maintain transient status, and Plaintiffs are required to transport all their belongings to other dwelling units on a regular basis being priced out of the city, and for several days per month travel more than 50 miles from San Francisco in order to acquire a dwelling. Plaintiff is then required to travel to work 6 days a week and is prevented from doing so while her property is being detained by Defendants.

b.   Plaintiffs are being deprived of their ability to purchase food in further locations from their dwelling which the majority of the past 60 days has been Downtown San Francisco. Plaintiffs do not have a kitchen inside of their dwelling and must purchase all meals of the day at different locations throughout San Francisco. The cost of both plaintiffs to eat daily can reach $1500 per month before they were deprived of their Automobile and without their automobile the cost will rise substantially higher as Plaintiffs will unable to travel outside of the city center to farther locations where the cost of food would be cheaper.

c.   Plaintiff in order to sustain the cost of food and shelter is required to use her automobile as an independent contractor, where she can be paid within 3 days after completing a delivery job, which has prevented her and Co-Plaintiff from becoming summarily evicted if she would fail to pay for a day.

d.   Plaintiffs on several occasions between the months of April and June were without a

dwelling and forced to sleep in their automobile. If Defendants continue to deprive Plaintiffs of

their automobile they will continue to suffer emotional distress and may become truly homeless

with no shelter. The thought and reasonable belief by Plaintiffs, based on the loss of economic

earning in a speedy time-frame, will eventually cause them to become homeless without the

shelter provided by their automobile, is a plausible outcome which is causing detriment and

emotional distress to Plaintiffs.

95.   Defendant Auto Return also neglected to put air in Plaintiffs' tire everyday of the

week as required to maintain adequate PSI which would prevent the tire from becoming.

96.   Plaintiffs alleged that Defendant Auto Return who had possession of Plaintiffs

Automobile, had a duty to maintain the property preventing any harm from occurring to it while in its

custody.

97.   The failure of Defendant to put air in the tire was negligent, and caused strain on the

suspension and unnecessary wear and tear on the components connected to the wheel and suspension.

98.   Defendant Hearing Officer is an employee of the City of San Francisco and operating

under the color of law, enforcing ordinances, statutes, and regulations of the City of San Francisco,

and State of California.

99.   Defendant hearing officer had discretion to release Plaintiff's property, and after being

informed of the injury to Plaintiff's, and likely-hood of possible unjust use of police power and

therefore unjust deprivation of Plaintiffs' rights, continued to deprive Plaintiffs of their property and

incidentally authorized the subsequent towing of the property to a locked facility increasing the

amount and level of deprivation and harm to Plaintiffs.

100.    Therefore Teresa Moran is Personally liable for failure to protect Plaintiffs due process rights when it was clear that Plaintiffs Property could have been wrongfully seized, and it was well within her power and discretion to order the return of Plaintiffs Automobile.

101.    Co-Plaintiff attended a Tow hearing to raise the same issues as in the boot hearing, and to raise the issue that the tow is invalid due to the fact that validity of the boot and citations was not proven, and thus the tow being a subsequent act was invalid as well.

102.    The Defendant Hearing Officer Chin, restricted the issues allowed at hearing to whether 72 hours have passed since the booting of the car.

103.    The Defendant Hearing Officer Chin, denied Co-Plaintiff Due process by not considering important issues that would affect the outcome of the hearing. He failed to consider issues of whether the Booting was valid, and whether the hearing comported to due process.

104.    Defendant Chin further mentioned that notices of citations were sent to the address on file located in Stockton California. This contradicts what Defendant Hearing Officer Teresa Moran stated in the Boot hearing, and evidences that proper notice was more than likely flawed.

105.    Defendant Hearing Officer Chin admitted he has a law degree and thus is qualified to understand legal arguments, and should not have ignored Co-Plaintiffs questions  regarding the Constitutionality of the hearing, and what the rules of procedure are for the tow hearing.

106.    Defendant Hearing Officer Chin ignored the majority of  Co-Plaintiff's questions including the question of whether he had sworn an oath to defend and support the U.S. Constitution.

107.    Defendant Auto Return is holding Plaintiffs Property on behalf of the City of San Francisco against Plaintiffs' will and demand for it's release.

108.    Co-Plaintiff informed supervisor Luisa(e111) that the tow was improper and to release his property and to not contact the Lien Holder, as that will prompt the release of the property to them

and they will certainly furnish to consumer reporting agencies that a repossession occurred damaging Plaintiff's Credit reputation.

109.   Defendant Auto Return refused to release the property and refused to disclose a copy of the contract between them and the City of San Francisco evidencing their agreement, and is guilty of conversion of Plaintiffs' Property.

110.   Plaintiffs have suffered Severe anxiety, fright, Panic, Economic losses, Emotional distress, loss of liberty, and deprivation of property and happiness as a result of the deprivations by All Defendants in this action.

111.   Defendant Auto Return is a private corporation doing business with the City of San Francisco, and knowingly engages in the deprivation of persons property without a contract, judgment, and or agreement from the person who's property they so detain.

112.   Plaintiffs make this complaint hastily to prevent further losses and not pleading all causes of action, and will amend this complaint after all motions for Temporary Restraining Order and Preliminary Injunction are filed.

## DAMAGES

113. As a proximate result of DEFENDANTS' conduct, Plaintiffs suffered deprivation of property without due process of law, conversion of their property, severe emotional distress, economic loss, and severe loss of liberty and freedom of locomotion.  As a further proximate result of DEFENDANTS' conduct, Plaintiffs incurred suffering such as excessive anxiety, loss of security and dignity, and extreme hardship.

## FIRST CAUSE OF ACTION

### Violation of Fourteenth Amendment to the U.S. Constitution

**(42 U.S.C. § 1983)**

**(PLAINTIFF v. TERESSA MORAN individually and officially, E. CHIN individually and officially, and DOES 1-10, inclusive)**

114. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 113 of this Complaint.

115. The DEFENDANT Hearing Officers, violated Plaintiff's right to Due Process of Law as provided for under the Fourteenth Amendment to the United States Constitution.

116. 116. The City and County of San Francisco through its agents and employees seized Plaintiffs property without providing them prior notice and opportunity for hearing, violating Plaintiffs due process rights.

117. Furthermore Defendant Hearing Officers conducted flawed hearings, did not bring forth sufficient evidence including actual notices that were mailed, did not bring witnesses or allow Co-Plaintiff to summon witnesses, did not not swear in any the parties, did not introduce evidence of proof of execution of mailing of Citations, and used a printed out record which was a list of alleged citations as their only evidence to support the validity of the booting.

118. Defendant Hearing Officers did not provide any statutory authority which authorizes the hearing, including any rules of procedures, and available defenses to the allegations.

119. Defendant Hearing Officers restricted the issue at hearing to whether there are 5 or more citations issued to the vehicle that were delinquent, and no defenses were allowed to the allegations.

120. Defendant continuously interrupted Co-Plaintiff during the hearing to disrupt his presentation of critical issues should have operated to invalidate the legality of the booting.

121. Therefore Defendants should be found guilty of Violating Plaintiffs rights to Due Process of Law.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION

**Violation of the Article 1 Section 7 of Constitution of the State of California**

**(PLAINTIFFS v. Teresa Moran individually, E. Chin individually, City & County of San Francisco and DOES 1-25, inclusive)**

122. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 120 of this Complaint.

123. The DEFENDANT Hearing Officers, violated Plaintiff's right to Due Process of Law as provided for under Article 1 Section 7 of the Constitution of the State of California.

124. The City and County of San Francisco through its agents and employees seized Plaintiffs property without providing them prior notice and opportunity for hearing, violating Plaintiffs due process rights.

125. Furthermore Defendant Hearing Officers conducted flawed hearings, did not bring forth sufficient evidence including actual notices that were mailed, did not bring witnesses or allow Co-Plaintiff to summon witnesses, did not not swear in any the parties, did not introduce evidence of proof of execution of mailing of Citations, and used a printed out record which was a list of alleged citations as their only evidence to support the validity of the booting.

126. Defendant Hearing Officers did not provide any statutory authority which authorizes the hearing, including any rules of procedures, and available defenses to the allegations.

127. Defendant Hearing Officers restricted the issue at hearing to whether there are 5 or more citations issued to the vehicle that were delinquent, and no defenses were allowed to the allegations.

128. Defendant continuously interrupted Co-Plaintiff during the hearing to disrupt his presentation of critical issues should have operated to invalidate the legality of the booting.

129. Therefore Defendants should be found guilty of Violating Plaintiffs rights to Due Process of Law.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**THIRD CAUSE OF ACTION**

**(CONVERSION under the Common Law of California)**

(PLAINTIFFS v. Teresa Moran Individually, E. Chin individually,  CITY AND COUNTY OF SAN FRANCISCO, AUTO RETURN and does 1-25  inclusive)

130. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 129 of this Complaint.

131. DEFENDANT CITY AND COUNTY OF SAN FRANCISCO through its officers above-described conduct, constituted substantial and unwarranted interference with the Plaintiffs' legal dominion over property.

132. Agents immobilized Plaintiffs' Automobile while it was legally parked not affecting the rights of any man or woman, and later towed Plaintiffs' Automobile to a locked facility depriving Plaintiffs therefrom.

133. Defendant hearing officers who were given the duty determine whether their actions were just, and having full discretion to remedy their violations, made an independent determination to deprive Plaintiffs of legal dominion and possession of their property, which was substantial and unwarranted interference with those rights.

134. Conversion is characterized as a strict liability tort not concerning itself with intent or motive of the parties committing the act.

135. Therefore Defendants should be found guilty of Conversion of Plaintiffs' Property WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## PRAYER

WHEREFORE, Plaintiff prays for relief, as follows:

1. For general damages according to proof;

2. For special damages, including but not limited to, past, present and/or future wage loss, income and support, medical expenses and other special damages in a sum to be determined according to proof;

3. For punitive damages and exemplary damages in amounts to be determined according to proof as to defendants DOES 1 through 25 and/or each of them;

4.   For reasonable attorney's fees pursuant to 42 U.S.C. §1988;

5.   For cost of suit herein incurred; and

6.   For injunctive relief: (a) enjoining Defendant  from authorizing, allowing, or ratifying the practice by any officer, or employee of Defendant from conducting proceeding against Plaintiffs which violate due process.

7.   Preliminary Injunction (b) enjoining Defendants from depriving Plaintiffs from their property until the merits of the case are decided.

8.   For such other and further relief as the Court deems just and proper.

Dated: August 11, 2017

Plaintiff Marimar Cornejo

Co-Plaintiff Jamil Bey